IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

CYNTHIA Y. NETHKEN,        )
                                      )
            Plaintiff,        )
                                      )
                                      )     CIV-11-741-D
v.                                )
                                      )
MICHAEL J. ASTRUE,        )
  Commissioner of Social Security    )
   Administration,        )
                                      )
            Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

1

I. Background

On January 20, 2009, Plaintiff protectively filed her applications for benefits. (TR 128-131, 135-138).   In her applications, Plaintiff alleged that she became disabled on December 1, 2006, due to problems in her neck, back, and ribs, "fluid at times in lungs," and inability to lift over 25 pounds or perform overhead work. (TR 128, 135, 174).  Plaintiff was working two part-time jobs during 2007 and most of 2008. (TR 157).  She stated, however, that she stopped "cleaning people[']s homes [as a self-employed contractor] effective 10/10/08." (TR 174).  At least until the date of her administrative hearing, Plaintiff continued her other part-time job as a church janitor, working a minimum of fifteen hours per week. (TR 30, 154).

Plaintiff described a high school education and vocational training. (TR 179-180). Plaintiff also described her previous jobs. (TR 175).  The agency determined that Plaintiff was receiving wages from her two jobs that exceeded substantial gainful activity levels until October 11, 2008. (TR 157, 164, 168).  Plaintiff also received workers' compensation awards for on-the-job injuries in November 2007 and August 2008. (TR 149-151).

Plaintiff's applications were administratively denied. (TR 52-55).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Kallsnick on April 29, 2010. (TR 24-51).  At the hearing, Plaintiff and a vocational expert ("VE") testified.  Plaintiff testified that she was 53 years old and could not work full-time because of degenerative disc disease in her back causing pain that extended down her left leg and caused her to limp, bilateral knee pain, breathing problems, neck pain, bilateral shoulder

pain, arthritis in her left elbow, hand cramps, arthritis in her joints and hips, depression, anxiety, social avoidance disorder, post-traumatic stress disorder, work-related restrictions imposed following surgery to repair a torn rotator cuff in her left shoulder, fatigue, difficulty concentrating, loss of memory, and problems with her feet, including foot cramps, ankle weakness, and pain from plantar's warts and "hammer toes." (TR 29-41).

Plaintiff estimated she could sit for one hour, stand about 30 minutes, lift about 20 pounds, and alternate sitting and standing for about five hours. (TR 41). Plaintiff testified that her usual activities included working at her janitorial position for three hours, then lying down for an hour and a half, attending church, attending doctor appointments, reading, and shopping for groceries and other items. (TR 42-43.)

The VE testified concerning the exertional and vocational requirements of Plaintiff's janitorial job and her past relevant jobs and also provided testimony concerning job availability for various hypothetical individuals in response to the ALJ's questioning. (TR 44-50). The ALJ subsequently issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 10-23). The Appeals Council declined to review this decision. (TR 1-3).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards

were applied.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart,

331 F.3d 758, 760 (10th Cir. 2003).  The "determination of whether the ALJ's ruling is

supported by substantial evidence must be based upon the record taken as a whole.

Consequently, [the court must] remain mindful that evidence is not substantial if it is

overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th

Cir. 2009)(citations, internal quotation marks, and brackets omitted).

        The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 416(i).  The Commissioner

follows a five-step sequential evaluation procedure to determine whether a claimant is

disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the

burden of establishing a prima facie case of disability. Id.  In this case, Plaintiff's

applications were denied at step five.  At the fifth and final step of the requisite sequential

evaluation process, the burden shifts to the Commissioner "to show that the claimant retains

sufficient [residual functional capacity] . . . to perform work in the national economy, given

her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir.

2007)(internal quotation and citation omitted).

III. ALJ's Decision and Plaintiff's Claims

        At step two of the requisite sequential analysis, the ALJ found that Plaintiff had severe

impairments due to status post left rotator cuff repair, depression, anxiety, and obesity. (TR

4

12).  At step three, the ALJ found that Plaintiff's impairments were not *per se* disabling under the agency's Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1.  The ALJ specifically considered the requirements of Listing 1.02, Listing 12.04, and Listing 12.06 of the regulations in making this determination.

At the fourth step, the ALJ found that despite her severe impairments Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level[1] except that she could only occasionally reach overhead, have no more than minimal contact with the general public, and perform only simple, unskilled work. (TR 14).  In making this RFC finding, the ALJ's decision reflects consideration of Plaintiff's testimony concerning her impairments and symptoms, the medical evidence in the record, and the opinions of Plaintiff's treating chiropractor and case manager at her mental health clinic concerning her functional abilities.  (TR 15-20).  As a result of her RFC for work, the ALJ found that Plaintiff was not capable of performing her previous jobs as a church janitor (as it is generally performed on a full-time basis), assembler, thrift store clerk, training aid for handicapped individuals, and construction worker as these jobs would require her to lift too much weight. (TR 21).

At the fifth and final step, the ALJ found that, considering Plaintiff's RFC and vocational characteristics, she was capable of performing jobs available in the economy.

---

[1]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Relying on the VE's testimony at the hearing, the ALJ found that Plaintiff could perform the jobs of mail sorter, food preparation worker, machine operator, or office cleaner. (TR 22). In light of these findings, the ALJ concluded that Plaintiff was not disabled and therefore not entitled to benefits.

Plaintiff contends that the ALJ erred in ignoring relevant portions of the medical record regarding Plaintiff's mental health treatment, erred in evaluating the opinions of her treating physicians, and erred in evaluating the medical evidence at step three. Plaintiff further asserts that there is not substantial evidence to support the finding that her mental impairments do not satisfy or equal the requirements of Listing 12.04 and that there is not substantial evidence to support the finding at step five she is not disabled. The Commissioner responds that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence supports the decision of the Commissioner.

IV. Treating Physicians' Opinions

Plaintiff contends that the ALJ did not properly evaluate her treating physicians' opinions. In her opening brief, Plaintiff supports this argument by referring to exhibits constituting over 400 pages of the administrative record[2] without specifying which, if any, of these records contain a treating physician's opinion. See 20 C.F.R. §§ 404.1527(a), 416.927(a)(defining medical opinions). Plaintiff's vague reference to a large portion of the administrative record lacks any cogent argument of error, and the Court is not required to

---

[2]Plaintiff cites to exhibits B1f through B37f. Plaintiff's Opening Brief, at 9.

scrutinize the records for evidence to support Plaintiff's vague claim of error.

Moreover, an ALJ is not required to discuss every piece of evidence so long as the record shows that the ALJ considered all of the evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).   An ALJ's decision is adequate if it discusses the "uncontroverted evidence" the ALJ chooses not to rely upon and any "significantly probative evidence" the ALJ decides to reject. Id. at 1010.  Plaintiff argues that the ALJ ignored "years of reports of mental health records," Plaintiff's Opening Brief, at 11, but again Plaintiff does not point to any particular record of mental health treatment that was not considered by the ALJ.

Next, Plaintiff contends that the ALJ did not consider "significantly probative evidence" in the record.  Plaintiff asserts that her "mental treatment actually began on April 21, 2001" and that the ALJ erroneously "disregarded" over "six years of documented mental health treatment" of Plaintiff. Plaintiff's Opening Brief, at 10.   Contrary to Plaintiff's assertion, the ALJ recognized in his decision that Plaintiff had been treated at a mental health clinic in 2007, 2008, and 2009 and that she stated she had been treated at this clinic since 2001. (TR 15, 19).  Plaintiff's administrative record reflects that Plaintiff was briefly treated at this same mental health clinic in April and May 2001.  (TR 474-493).  However, this brief record of treatment did not provide significantly probative evidence that the ALJ was required to consider.  First, a substantial time lapse existed between this brief treatment period and Plaintiff's mental health treatment beginning in 2007.  Secondly, there is no evidence of ongoing mental health treatment of Plaintiff prior to April 2007.  Thus, no error

occurred in this respect.

The ALJ summarized the relevant portions of the record of Plaintiff's mental health treatment, which reflected that she began ongoing mental health treatment at the clinic in April 2007 and was discharged from treatment in June 2008. (TR 19).  The ALJ correctly noted that Plaintiff's therapist stated she was "a success story" at the time of her discharge. (TR 19).  The ALJ further noted that Plaintiff again sought mental health treatment at the clinic in May 2009. (TR 19).   There are no notes of ongoing mental health treatment of Plaintiff, however, after June 2008.

Plaintiff asserts that the ALJ failed to provide adequate reasons for rejecting the opinion set forth in a mental residual functional capacity ("RFC") assessment completed by Plaintiff's case manager in January 2010 at her treating mental health clinic.  The Plaintiff's case manager is not a physician or an acceptable medical source.  20 C.F.R. §§ 404.1513(a), 416.913(a).   The ALJ's decision reflects that the ALJ considered this RFC assessment but found it was entitled to "little weight."   The ALJ specifically reasoned that "[l]ittle weight is given to the [RFC prepared by the case manager] as it is not consistent with the claimant's daily activities and/or current work activity." (TR 20).

This RFC assessment was not entitled to controlling weight under the well-established analytical framework for evaluating the opinions of acceptable medical sources. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(holding that generally an ALJ must give opinion of acceptable treating source controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial

evidence in the record)(quoting SSR 96-2p, 1996 WL 374188, at *2). Nor did the ALJ err in giving "little weight" to the mental RFC assessment provided by Plaintiff's case manager. The mental RFC assessment (TR 761-765) dated January 20, 2010, set forth a multitude of findings of "markedly limited" mental functional abilities without any reference to supporting medical evidence in the record. As the ALJ found in his decision, Plaintiff's own lengthy description of her daily activities, which included working fifteen hours per week, attending church several times a week, got along well with her boss, volunteering at her church, attending bible study groups, visiting with friends, shopping, maintaining her apartment, caring for her own personal needs without assistance, and other activities (TR 244-269), were not consistent with the findings set forth in the case manager's RFC assessment.

Moreover, Plaintiff reported to her therapist in January 2008 that she was working two jobs and enjoyed her work. (TR 565). In June 2008 when she was discharged from treatment at her mental health clinic, Plaintiff reportedly stated that she felt "balanced," at "mental peace," and "happy" with her circumstances. (TR 495). Although she again sought treatment at the mental health clinic in May 2009, there is no record of ongoing mental health treatment after June 2008. The ALJ provided valid reasons that are supported by the record for his decision to give the RFC assessment "little weight" in determining Plaintiff's RFC for work. No error occurred in this respect.

The ALJ further noted that "great weight" was given to the opinions of the agency's medical consultants as these consultants are "experts . . and their opinions are well supported

by the objective medical evidence of record." (TR 20).  The regulations require that an ALJ consider the findings of state agency medical and psychological consultants as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).  Plaintiff correctly notes that no agency medical consultants evaluated the effect of Plaintiff's mental impairments on her ability to work.  Plaintiff contends that the ALJ erroneously gave the opinions of the agency's medical consultants controlling weight without recognizing that the opinions of these consultants only assessed the effect of Plaintiff's physical impairments upon her ability to work.  However, the ALJ did not state in his decision that the opinions of the agency's medical consultants concerning Plaintiff's physical RFC for work were also considered with respect to the issue of Plaintiff's mental RFC for work.

Further, the record provides substantial evidence to support the physical RFC assessments by the agency's medical consultants.  Dr. Rodgers opined in April 2009 that Plaintiff was capable of performing work involving occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing and/or walking about 6 hours in an 8-hour work-day, sitting about 6 hours in an 8-hour workday, and "limited" reaching in all directions. (TR 528-535). Another medical consultant, Dr. Woodcock, opined in June 2009 that Plaintiff had the same physical functional abilities. (TR 592-599).  The medical record reflects that Plaintiff underwent surgical repair in January 2006 of a torn rotator cuff after she injured her left shoulder in an on-the-job accident. (TR 378, 397).  Two months later, her treating surgeon found that she had obtained an "excellent result" from her operation and she was released to return to full-time work with the restriction that she avoid overhead work for three

months. (TR 387). In June 2006, she was released from the surgeon's care with no restrictions. (TR 392). In November 2003, Plaintiff was involved in a motor vehicle accident in which she sustained a pneumothorax with large pleural effusion in her left lung. (TR 415-416, 415). In July 2008, Plaintiff underwent a pulmonary function study conducted by Dr. Sullivan. Dr. Sullivan interpreted the study as showing a moderate obstructive lung defect, but Dr. Sullivan reported that Plaintiff's lung capacity showed a "significant [positive] response" and "better air movement" after she used a bronchodilator. (TR 665-667). Plaintiff underwent a period of physical therapy to strengthen her left shoulder in 2007, and in June 2007 her treating physician, Dr. Johnson, released her to full-time work with permanent restrictions of only occasional overhead lifting and no lifting over 25 pounds frequently or 50 pounds occasionally. (TR 681). The agency's medical consultants provided RFC assessment that were consistent with these work-related restrictions, and the ALJ incorporated this medical evidence into the RFC finding. Thus, the ALJ did not err in considering the RFC assessments by the agency's medical consultants as opinion evidence or in giving "great weight" to those assessments. Moreover, the ALJ did not err in assessing the opinion of any treating physician.

V. Mental Impairments - Step Three

Plaintiff contends that the ALJ erred in ignoring objective medical evidence showing Plaintiff's mental impairment satisfied or equaled the requirements of Listing 12.04. This Listing for affective disorders requires medical evidence of at least four persistent symptoms of depressive syndrome, and these symptoms are described in the Listing. 20 C.F.R. pt. 404,

subpt. P, app. 1, § 12.04(A)(1).  Alternatively, this Listing requires medical evidence of at

least three persistent symptoms of manic syndrome, and these symptoms are described in the

Listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(A)(2).  The Listing further requires

evidence of at least two functional limitations of the severity described in the Listing,

including "marked" restrictions of daily living activities, "marked" difficulties in maintaining

social functioning, "marked" difficulties in maintaining concentration, persistence, or pace,

or "repeated" episodes of decompensation of extended duration. 20 C.F.R. pt. 404, subpt. P,

app. 1, § 12.04(B).

        As evidentiary support for Plaintiff's claim of error in the ALJ's step three

determination, Plaintiff points to the RFC assessment authored by Plaintiff's case manager

at her treating mental health clinic.  However, the ALJ provided valid reasons that are

supported by the record for giving "little weight" to this RFC assessment and accompanying

narrative of symptoms.  As the ALJ found, the case manager's RFC assessment and

accompanying narrative are not consistent with Plaintiff's own statements concerning her

usual daily activities and functional abilities.  The RFC assessment and narrative are also

inconsistent with the records submitted by Plaintiff's treating mental health clinic which

reflected that her depression and anxiety symptoms improved during her approximately

fourteen-month period of ongoing treatment at the clinic in 2007 and 2008.

        Curiously, Plaintiff complains that the ALJ erred in considering her subjective

statements in the step three determination because these statements were not objective

medical evidence.  In making the step three determination concerning the effects of a mental

impairment upon a claimant's functional abilities, the regulations require the ALJ to evaluate "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).  In the ALJ's decision, the ALJ refers to Plaintiff's statements in her report of her usual daily activities and functional abilities dated February 4, 2009. (TR 190-197).  The ALJ did not err in considering these statements in evaluating Plaintiff's functional abilities under the Part-B portion of Listing 12.04.  Moreover, the ALJ did not merely rely on "boilerplate" language in making the step three determination, and Plaintiff cites no authority for her assertion that the ALJ erred by failing to solicit the testimony of a medical expert in relation to the step three determination.

At step three, the ALJ found that Plaintiff's mental impairments due to depression and anxiety had resulted in functional limitations, including mild restrictions in daily living activities, moderate difficulties in social functioning, and mild difficulties in concentration, persistence or pace. (TR 13-14).  The record, including Plaintiff's own statements concerning her functional abilities, support the ALJ's findings of mild to moderate functional limitations.  For instance, in a psychosocial assessment completed at her treating mental health clinic in May 2009, Plaintiff stated she had "occasional moderate short term memory problems and denie[d] any problems with her concentration." (TR 554).  She described symptoms of "marked mood reactivity and intense anger" but denied problems with impulsivity, denied problems with paranoia or suicidal ideas, denied problems with psychotic features, and appeared to have "some maladaptive personality traits" contributing to her mood symptoms.

13

(TR 554).  Although she reported chronic depression problems, she stated she had an elderly friend she sometimes visited, she attended church three times a week, and she worked part-time at her church. (TR 553, 558).    The ALJ's step three determination is supported by substantial evidence in the record, and no error occurred with respect to this determination.

VI. <u>Step Five</u>

Plaintiff contends that there is not substantial evidence to support the ALJ's step five determination. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education and work experience." <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

As support for her argument, Plaintiff points to the VE's testimony in response to a hypothetical inquiry posed by the VE.  In this hypothetical, the ALJ asked the VE to assume that the hypothetical claimant exhibited the "marked" functional limitations as set forth in her case manager's mental RFC assessment.   (TR 49). The VE responded that such an individual would "not be able to work in competitive employment [and would n]ot be able to maintain a job without some type of special supervision." (TR 49).

A hypothetical is sufficient if it contains "all of the limitations found to exist by the ALJ." <u>Barnett v. Apfel</u>, 231 F.3d 687, 690 (10th Cir. 2000).  The ALJ was not required to accept the VE's opinion regarding the availability of jobs for a person with these "marked" functional limitations, as the ALJ found that this RFC assessment was entitled to "little weight" and was inconsistent with Plaintiff's own statements and her status as a part-time

janitorial worker.  See Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995)(finding ALJ was not required to accept VE's answer to hypothetical questioning that included limitations "claimed by plaintiff but not accepted by the ALJ as supported by the record").  The VE testified that an individual with Plaintiff's RFC for work would be capable of performing a number of jobs available in the economy, including the jobs of office mail sorter (light exertional level), food preparation worker (light exertional level), office cleaner (light exertional level), and sedentary machine operator. (TR 46-47).   The VE's testimony provides substantial evidence to support the ALJ's step five determination.  Therefore, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____April 25th_, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____5th_____ day of _____April_____, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE